EVELYN SMITH, Plaintiff-Appellant, *v.* ST. THERESE HOSPITAL *et al.*,
Defendants-Appellees.

Second District    No. 81-625

Opinion filed May 13, 1982.—Rehearing denied June 11, 1982.

Erwin Cohn, of Cohn and Flynn, of Chicago, for appellant.

Joseph B. Lederleitner and Robert Marc Chemers, both of Pretzel, Stouffer, Nolan and Rooney, and Stephen R. Swofford and Michael F. Henrick, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago, for appellees.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, Evelyn B. Smith, appeals pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)) from summary judgments granted defendants, Dr. Ronald Hoffman and St. Therese Hospital, and also from an order denying her motion to add an additional expert witness under section 58(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 58(3)).

Plaintiff commenced this malpractice action in February 1979 against these defendants, and others who are not parties to this appeal, alleging she sustained damages to her eyes while in defendant hospital for gall-bladder surgery performed by Dr. Hoffman. This is the second interlocutory appeal undertaken by plaintiff as a result of the dismissal of defendants in this case. See *Smith v. St. Therese Hospital* (1980), 87 Ill. App. 3d 782, 410 N.E.2d 219.

Generally, the law applicable to this case is well settled. Summary judgment may be appropriate in malpractice cases. (*Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 326, 431 N.E.2d 48, 51; *Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 427 N.E.2d 1322.) Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57) provides that either plaintiff or defendant may move, with or without supporting affidavits, for summary judgment and the opposite party may file counteraffidavits. If the pleadings, depositions, affidavits, exhibits and admissions on file in a case then show there are no remaining genuine issues of material fact, the moving party is entitled to summary judgment as a matter of law. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 92, 312 N.E.2d 601, 604.) If the party moving for summary judgment supplies evidentiary facts which, if not contradicted, would entitle him to judgment, the opposing party cannot rely upon his complaint or answer alone to raise issues of material fact. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 501, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Conversely, in the absence of evidentiary facts in support of a motion for summary judgment, a party may rely upon his complaint or answer to establish triable issues of fact. *Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 323, 403 N.E.2d 1239, 1241.

Summary judgment is a drastic remedy and is to be awarded with caution; only if the right of the movant is clear and free from doubt may it be granted. (*In re Estate of Tomaso* (1980), 82 Ill. App. 3d 286, 288, 402 N.E.2d 702, 704-05; *Indiana Harbor Belt R.R. Co. v. Budd Co.* (1980), 87 Ill. App. 3d 91, 94, 408 N.E.2d 944, 947.) If more than one conclusion is possible or reasonable men could arrive at different conclusions, summary judgment is not appropriate (*Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 986, 360 N.E.2d 440, 444), and evidentiary materials submitted in support of the motion must be strictly construed against the movant and liberally construed in favor of the non-movant. (*St. Clair v. Sisters of the Third Order of St. Francis* (1979), 72 Ill. App. 3d 421, 423, 390 N.E.2d 966, 967-68.) A reviewing court will reverse an order granting summary judgment if it is determined that a material question of fact does exist. *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 349 N.E.2d 1.

### Dr. Ronald Hoffman

Count II of the fourth amended complaint was directed against Dr. Hoffman and alleged, *inter alia*, that he was a surgeon in St. Therese's Hospital and plaintiff was his patient for gallbladder surgery on February 7, 1977, and during her admission to the hospital. It further alleged Dr. Hoffman negligently failed to monitor plaintiff following surgery; failed to examine the records of plaintiff's condition; failed to comply with the rules and bylaws of defendant hospital after performing surgery upon plaintiff; failed to render proper post-operative care to plaintiff; and, failed to respond to a post-operative medical emergency confronting her. Defendant answered denying the material allegations of the complaint and on July 7, 1980, filed his first motion for summary judgment. It set forth as grounds that plaintiff's complaint was for alleged eye damage following administration of atrophine sulphate as an anesthetic preparatory to gallbladder surgery in St. Therese's Hospital and that Dr. Hoffman did not administer or order the drug or any other anesthetic. The motion further stated (inaccurately) that plaintiff had not alleged unskillful surgery or post-operative care on the part of Dr. Hoffman in her complaint and it referred to answers to interrogatories filed on behalf of another defendant by a Dr. Kirkpatrick in which he stated, *inter alia*, that Dr. Kirkpatrick of Anesthesa Services ordered the use of atrophine sulphate for plaintiff and it was administered by a hospital ward nurse; that its purpose was to prevent reflexes and there are no tests to determine a patient's sensitivity to the drug; that Dr. Kirkpatrick has ordered atrophine sulphate 50,000 times as an anesthesiologist and no patient is known to have incurred an eye injury; in the opinion of Dr. Kirkpatrick it is not possible for sensitivity to the drug to cause injury to the eye as complained of by plaintiff. Dr. Hoffman's motion concluded that there were no remaining issues of fact that any conduct on his part caused plaintiff's injury and requested summary judgment.

This motion was continued generally and on June 11, 1981, Dr. Hoffman filed a supplemental motion for summary judgment in which he further alleged, *inter alia*, that he was a surgical consultant called in by plaintiff's attending physician, Dr. Jude Pinto, and did not participate in the anesthesia of plaintiff. The motion referred to a discovery deposition of Dr. Pinto (stating that a transcript thereof will be offered to the court when received) in which Dr. Pinto was alleged to have said he was plaintiff's attending physician and had called in Dr. Hoffman to perform the gallbladder surgery; that Dr. Pinto assisted, but neither he nor Dr. Hoffman ordered atrophine sulphate for plaintiff; that following surgery Dr. Pinto saw plaintiff each day during her confinement and it was his usual practice to follow the patient after surgery rather than the surgeon doing so. The motion further alleged that plaintiff was required, through expert

evidence, to establish a standard of care and then prove by affirmative evidence defendant was negligent in light of that standard causing plaintiff's injury; that no one has testified there was any deviation from the standard of care by Dr. Hoffman and that Dr. Pinto had testified on June 4, 1981, that Dr. Hoffman's management of the case was within the accepted standard of medical care.

We note defendant's motion for summary judgment was executed by his attorney, unverified, and not supported by affidavit. The deposition of Dr. Pinto does not appear in the record nor are any portions of it attached to this defendant's motion. The motion for summary judgment of the defendant hospital does refer to a deposition of Dr. Pinto taken June 3, 1981, and it included as exhibits pages 42, 43 and 66. There, an unnamed doctor, presumably Dr. Pinto, stated that if the nurses failed to discover any problems with the eye that he would take the blame for missing it and that he had no criticism of the care rendered to plaintiff.

Plaintiff's response to defendant's summary judgment motion was also not supported by affidavit, but it noted her action against Dr. Hoffman charged that he negligently failed to render proper post-operative care to her following surgery. It also alleged that Dr. Burton A. Russman will testify for plaintiff and in his report stated that "I have received the records sent to me and it appears as though the patient was given pre-operative atrophine, which evidently produced a reflex pupillary dilation sufficient to produce a rise in the interocular pressure in a predisposed individual such as Mrs. Smith due to her narrow anterior chambers." The trial court thereupon granted Dr. Hoffman's motion for summary judgment.

Plaintiff's complaint alleged Dr. Hoffman was negligent in his treatment and monitoring of her following surgery specifying seven alleged acts or omissions as contrary to the requisite standard of care. It does not refer to the administration of atrophine sulphate prior to surgery, but to her post-operative care. In his first motion for summary judgment Dr. Hoffman relied upon statements by Dr. Kirkpatrick that he ordered the drug and his opinion that it could not cause injury to plaintiff's eyes and concluded summary judgment should be granted as no conduct by Dr. Hoffman caused injury to her. In his second motion defendant referred to a deposition of Dr. Pinto, which is not in the record, and stated Dr. Pinto testified "Dr. Hoffman's management of plaintiff's case was within the accepted standards of medical care." At most, however, the excerpts from Dr. Pinto's deposition filed in support of the hospital's motion for summary judgment (even if we assume it can be considered in aid of this defendant's motion), show only that Dr. Pinto had "no criticism" of the care rendered plaintiff.

Plaintiff essentially contends summary judgment in favor of Dr. Hoff-

man was erroneous as her complaint against him was directed to his negligent failure to render proper care to her following his surgery. Defendant asserts that by his motions it was established he did not order or administer the pre-anesthetic drug, or then examine plaintiff; that he was not responsible for plaintiff's post-operative care; and that plaintiff's attending physician Dr. Pinto stated that he had no criticism of any care rendered to plaintiff. Defendant concludes that as plaintiff did not respond to his motion with evidentiary facts by expert medical testimony that Dr. Hoffman failed to conform to the required standard of care, summary judgment was appropriate.

■■■ It is true that in a trial of a medical malpractice action plaintiff must establish through expert testimony the standard of care against which defendant's conduct is to be measured and whether in light of that standard, defendant was negligent causing injury to plaintiff. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 255, 381 N.E.2d 279, 282.) It is also true that where by affidavit, or other appropriate evidentiary means in support of his motion for summary judgment, defendant has established, without contradiction, that he met the standard and his care and treatment conformed with that ordinarily applied by physicians in similar circumstances, summary judgment will be granted. (See *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48; *Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 427 N.E.2d 1322.) To be entitled to summary judgment under section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57) the defendant must, however, prove that there "is no genuine issue as to any material fact." *Smothers v. Butler* (1979), 78 Ill. App. 3d 1018, 1021, 398 N.E.2d 12, 15; *Ding v. Kraemer* (1978), 59 Ill. App. 3d 1042, 1043, 376 N.E.2d 266, 267.

■■ On consideration of the evidentiary materials offered in support of Dr. Hoffman's motion, however, we conclude they were insufficient to shift the burden to plaintiff to present additional facts in support of her complaint in order to withstand the motion. The fact someone else handled the anesthetic prior to Dr. Hoffman's surgery; that it was Dr. Pinto's "usual practice" to follow the patient after surgery rather than the surgeon or that he had "no criticism" of the care accorded to her neither established a standard of care nor met plaintiff's complaint as it was directed to Dr. Hoffman. Evidentiary materials in support of a motion for summary judgment must be strictly construed against movant and liberally construed in favor of the nonmovant. (See *St. Clair v. Sisters of the Third Order of St. Francis* (1979), 72 Ill. App. 3d 421, 423, 390 N.E.2d 966, 967-68.) It is apparent Dr. Hoffman's motion failed to remove any material issue of fact relevant to this case and summary judgment was erroneously granted as to him.

### St. Therese Hospital

Count I of plaintiff's complaint alleged the defendant hospital was negligent, *inter alia*, for failure to test plaintiff for reaction to atrophine sulphate; failure to warn of possible adverse effects; failure to keep adequate records of plaintiff's condition; and failure to comply with the hospital rules and bylaws. The hospital's motion for summary judgment alleged that Abel Swirsky, disclosed by plaintiff as an expert witness to establish the standard of care required of this defendant, was not qualified to testify and also relied upon excerpts from Dr. Jude Pinto's deposition in which he stated that he was responsible to discover plaintiff's eye problems and that he had no criticism of the hospital's care of plaintiff. This defendant concludes that these evidentiary materials reflect the hospital rendered proper care and did not cause plaintiff's injury making summary judgment appropriate.

For the same reasons discussed relative to Dr. Hoffman's motion, we conclude summary judgment also should not have been granted in favor of the hospital.

A deposition of Swirsky, relied upon by defendant, disclosed he is a senior health planner for the city of Chicago with a background in health care administration since 1946. He had experience in the supervision of nursing staff and patient care and in the preparation of nursing manuals. He has also held positions as a hospital administrator. Swirsky testified that the hospital deviated from the standard of good hospital care practiced in the area in regard to plaintiff in violation of the accreditation standards of the Joint Commission of Hospitals with which he was familiar. Those standards require that medical records contain sufficient information to support a diagnosis and to justify treatment given to a patient. Plaintiff's charts, however, contain no entry that an examination of her had been made before codeine was shown to have been administered for sinus headaches on the third, fourth and fifth days following her surgery. Swirsky also stated he could not answer whether the lack of charting caused the plaintiff's injuries as he was not a clinician.

The hospital contends that as Dr. Pinto stated he had no criticism of the care given plaintiff and because plaintiff's expert, Swirsky, was not qualified to testify to the standard of care required of it that summary judgment was properly granted.

■■ As noted earlier, Dr. Pinto's lack of criticism of anyone falls far short of providing "* * * facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, * * *" (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459), and would not require plaintiff to offer evidentiary materials in support of her complaint. Furthermore, although Swirsky was not a medical practitioner, he was qualified to express his opinion that the hospital may have deviated

from the requisite standard of care to which it was subject. Had the hospital, in fact, submitted evidentiary material in support of its motion for summary judgment, Swirsky's testimony would have been sufficient to raise a genuine issue of fact sufficient to require denial of the motion. See *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 293, 415 N.E.2d 390, 396; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.

### Expert Witness

Plaintiff also appeals from an order denying her motion to add Dr. Burton Russman as an expert witness to testify as to negligence of the hospital.

Section 58(3) of the Civil Practice Act provides:

"A party shall not be required to furnish the names or addresses of his witnesses, except that upon motion of any party disclosure of the identity of expert witnesses shall be made to all parties and the court in sufficient time in advance of trial so as to insure a fair and equitable preparation of the case by all parties." Ill. Rev. Stat. 1979, ch. 110, par. 58(3).

On October 28, 1980, on motion of defendants, plaintiff was directed to identify all expert witnesses with respect to all parties by December 4, 1980, subsequently extended by the trial court to February 26, 1981. Plaintif advised the parties that Abel Swirsky and Dr. Ralph Morris would testify and their depositions were ordered taken. On April 22, 1981, plaintiff further advised defendants by letter that Dr. Burton Russman and Dr. Jacob Wilinsky would be called to testify at trial and enclosed a report by Dr. Russman relating to plaintiff's condition. The letter informed defendants that Dr. Wilinsky was to perform surgery on plaintiff's left eye on May 19 and his report would be forthcoming thereafter. On June 11, 1981, the cause was removed from the July 20 trial call on motion of another defendant who wished to depose Dr. Russman, and it was reset for trial on August 31. On July 28, plaintiff requested the court to amend its expert witness disclosure order originally entered December 4, 1980, in order to add Dr. Russman as an expert witness. The motion was denied by the trial court.

■■ We think the trial court abused its discretion in denying plaintiff's request to add Dr. Russman as an expert witness. Section 58(3) is intended to insure all parties have an opportunity to fairly and equitably prepare their case in advance of trial, and defendants clearly could not be surprised by the testimony of this witness. They were first advised plaintiff intended to call Dr. Russman as an expert medical witness some four months prior to the last trial date set by the court. Over two months

before that trial date all defendants were given an opportunity to depose Dr. Russman, and when plaintiff sought to amend her list of witnesses to add Dr. Russman, the trial was still almost a month in the future. In these circumstances the trial court should have permitted the additional expert witness. See *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 422 N.E.2d 241.

For the foregoing reasons the summary judgments entered in favor of defendants and the order denying leave to add Dr. Russman as an expert witness are reversed and the cause is remanded for further proceedings.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.