CLARK SMITH, Plaintiff-Appellant, v. SOUTH SHORE HOSPITAL *et al.*, Defendants-Appellees.

First District (1st Division) Nos. 1—86—2387, 1—87—0477 cons.

Opinion filed August 21, 1989.

Sheldon Hodes and Leonard D. Litwin, both of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago (Mark C. Fedota, Ruth E. Van Demark, Davi L. Hirsch, Stephen R. Swofford, Susan A. Wagener, and Kathryn A. Spalding, of counsel), for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Plaintiff, Clark Smith, appeals from a July 24, 1986, order, granting summary judgment to Dr. Teresito Arcillas and South Shore Hospital, defendants in a medical malpractice action. The record discloses that on March 6, 1979, Dr. Arcillas examined the plaintiff, who was experiencing difficulty urinating. Plaintiff's condition was diagnosed as a benign enlargement of the prostate gland or "benign prostatic hypertrophy." As a result of this diagnosis, Dr. Arcillas ordered tests to be performed on an outpatient basis, and subsequently, on March 20, 1979, arranged to have plaintiff admitted to South Shore Hospital for surgery to correct this condition.

Upon admission, Dr. Arcillas took an admissions history of the plaintiff which is used to determine what kind of anesthesia to administer to the patient. Dr. Velas Khanterperker, a urologist, was consulted on March 21, 1979, regarding the plaintiff's condition. After

examining the plaintiff, he confirmed Dr. Arcillas' diagnosis of enlargement of the prostate gland and performed a cystoscopy to determine whether there was any bleeding, a tumor or any change in the lining of the urinary bladder which would indicate a chronic obstruction. On March 22, 1979, the day before the surgery, the notes of the nurse and the house physician revealed that the plaintiff was experiencing weakness and could not get back into bed without assistance. However, the admissions history taken by Dr. Arcillas did not indicate that upon admission to the hospital plaintiff was experiencing weakness in his legs. Instead, plaintiff informed Dr. Arcillas that he had not been previously sick or hospitalized.

After reviewing plaintiff's hospital records, the anesthesiologist, who was employed by South Shore Hospital, approved plaintiff for spinal anesthesia and administered the spinal anesthetic pontocaine. On March 23, 1979, Dr. Khanterperker performed transurethral resection of the prostate gland surgery. Dr. Arcillas did not participate in the surgery or the administering of the anesthesia. Three days after surgery was performed, plaintiff attempted to walk and experienced weakness in his legs. As a result of the continued weakness, plaintiff was examined by two other neurosurgeons who diagnosed his condition as "flaccid paraplegia," which is an absence of the "abdominal and cremasteric reflexes."

On April 6, 1979, an addendum to plaintiff's history was made by Dr. Arcillas in which he noted that plaintiff's wife had informed him that plaintiff had suffered weakness in his legs for six months prior to the surgery, and he was a heavy drinker. On April 25, 1979, plaintiff was transferred to the Veteran's Administration Hospital for further consultation, and it was discovered that he had general damage to his nervous system.

Plaintiff filed a two-count complaint on November 30, 1979, against Dr. Arcillas and South Shore Hospital, alleging that: Dr. Arcillas failed to take a proper medical history; the hospital negligently failed to require the proper taking of a medical history by Dr. Arcillas; the spinal anesthetic was negligently administered by Dr. Tomas Munoz, the hospital anesthesiologist; and raising a negligence theory based on res ipsa loquitor.

On January 31, 1985, Dr. Arcillas moved for summary judgment, attaching the affidavit of Dr. Maynard Cohen, a board-certified neurologist, who found that Dr. Arcillas met the acceptable standard of care in treating the plaintiff. On September 18, 1985, the hospital moved for summary judgment asserting that the plaintiff had provided no competent evidence to support his allegations and that he

had not named an expert. Dr. Edward Brunner, a board-certified anesthesiologist, also testified that in his opinion South Shore Hospital met the appropriate standard of care in treating plaintiff. Moreover, the anesthesiologist met the standard of practice for anesthesia.

The trial court granted summary judgment for Dr. Arcillas on July 24, 1986, and partial summary judgment to the hospital. On January 22, 1987, summary judgment was entered for the hospital by the trial court on the remaining issues. Plaintiff appeals from the July 24, 1986, order. On appeal plaintiff contends that the trial court erred in granting summary judgment since genuine issues of material facts remain regarding whether Dr. Arcillas met the standard of care for taking a hospital admission history and whether the hospital anesthesiologist negligently administered the spinal anesthesia.

The purpose of summary judgment is to determine whether there exist any genuine issues of material fact (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552; *Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112, 514 N.E.2d 188; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867); and a motion for summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c)). Summary judgment is a drastic measure for disposing of litigation and should only be used when the right of the moving party is clear and free from doubt. *Purtill*, 111 Ill. 2d at 240; *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016, 436 N.E.2d 598.

In determining whether a genuine issue of material fact exits, courts must construe the pleadings, depositions, admissions, exhibits and affidavits on file strictly against the movant and liberally in favor of the opponent. (*Addison*, 124 Ill. 2d at 294; *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177, 483 N.E.2d 210, *cert. denied* (1986), 475 U.S. 1016, 89 L. Ed. 2d 313, 106 S. Ct. 1199; *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 594, 491 N.E.2d 803.) Where a party moving for summary judgment provides facts which, if not contradicted, would entitle that party to judgment as a matter of law, the opponent of the motion cannot rely solely on his pleadings to raise issues of material fact. (*Addison*, 124 Ill. 2d at 294; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) Therefore, facts contained in an affidavit in support of a motion for summary judgment are admitted and must be taken as true for purposes of the motion where the opponent has failed to contradict the

facts by counter affidavit. *Purtill,* 111 Ill. 2d at 241; *Heidelberger v. Jewel Cos.* (1974), 57 Ill. 2d 87, 92-93, 312 N.E.2d 601.

■■ ■ It is well established that summary judgment will be affirmed on review where a party in opposition to the motion had ample opportunity to obtain counteraffidavits but failed to do so. (See *Johnson v. Matviuw* (1988), 176 Ill. App. 3d 907, 913, 531 N.E.2d 970; *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 460, 510 N.E.2d 531; *Goldstein v. Kantor* (1981), 101 Ill. App. 3d 264, 267, 427 N.E.2d 1322.) Moreover, summary judgment in favor of the defendants is proper where the plaintiff has failed to reveal an expert opinion to sustain the allegations or indicate that such an opinion would be forthcoming in the future. (*Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 835-36, 390 N.E.2d 53; *Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 241, 251 N.E.2d 105.) In the present case, plaintiff's complaint was filed for five years prior to Dr. Arcillas' motion for summary judgment and 5 years, 10 months prior to South Shore Hospital's motion for summary judgment. Summary judgment was not granted for Dr. Arcillas or South Shore Hospital until July 24, 1986. During this period, plaintiff had a sufficient opportunity to obtain a counteraffidavit from an expert witness, stating that Dr. Archillas and/or the South Shore Hospital negligently performed their duties. However, plaintiff failed to provide the trial court with any counteraffidavits.

Plaintiff argues that the trial court erred in granting summary judgment since there remains a genuine issue of material fact as to whether Dr. Arcillas and the hospital met the standard of care in taking the hospital admissions history of the plaintiff, which should have revealed the weakness in plaintiff's legs. Plaintiff further argues that an issue of fact further remains regarding whether the use of pontocaine anesthesia in a patient experiencing weakness in his lower legs constitutes negligence.

■■■ It is well established that in a medical malpractice action the plaintiff must generally present expert testimony to establish: (1) the proper standard of care against which the defendants' conduct is measured; (2) a deviation from the applicable standard of care; and (3) an injury that was proximately caused by this breach of the applicable standard of care. (*Addison,* 124 Ill. 2d at 297; *Purtill,* 111 Ill. 2d at 242; *Beaman v. Swedish American Hospital Association* (1989), 179 Ill. App. 3d 532, 536, 534 N.E.2d 522; *Stevens v. Sadiq* (1988), 176 Ill. App. 3d 333, 336, 530 N.E.2d 1159.) Exceptions to the general rule requiring expert testimony have been recognized by our courts in cases where the physician's negligent treatment is so grossly apparent or where the treatment is so common that it is within the every-

day knowledge of a layperson. (*Addison*, 124 Ill. 2d at 297; *Purtill*, 111 Ill. 2d at 242; *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256, 381 N.E.2d 279.) In the instant case, plaintiff has alleged negligence against Dr. Arcillas and the hospital. However, plaintiff has failed to introduce any acceptable evidence to establish an applicable standard of care, the defendants' deviation from that standard of care and any injury the plaintiff has suffered as a result of that deviation. Moreover, neither of the exceptions to the general rule requiring expert testimony is applicable. The negligence alleged to have been committed by the defendants is not so grossly apparent, nor is the treatment so common that it is within the everyday knowledge of a layperson.

Plaintiff argues that the evidence provided by the deposition testimony of the defendants' experts, Dr. Maynard Cohen, Dr. Edward Brunner, and the standards of the Joint Commission on Accreditation of Hospitals established the standard of care regarding the taking of a proper medical history. Plaintiff did offer excerpts from the deposition testimony of the defendants' expert witnesses Dr. Brunner and Dr. Cohen based on hypothetical questions. However, even if the expert witnesses would have provided treatment different from the treatment received by plaintiff, medicine is an inexact science, and the testimony of another physician that his actions would have been different from the defendants is insufficient to establish a *prima facie* case. (*Walski*, 72 Ill. 2d at 261; *Stevens*, 176 Ill. App. 3d at 338-39.) Moreover, Dr. Cohen's deposition testimony and his affidavit did not support plaintiff's allegation that an improper medical history was taken since he specifically stated that Dr. Arcillas did not deviate from the standard of care in performing his duties.

Plaintiff further argues that Dr. Arcillas breached his duty to take a proper medical history as evident by the addendum to plaintiff's medical history taken after the surgery which revealed that plaintiff's wife had informed Dr. Arcillas that the plaintiff had experienced weakness in his legs for six months prior to surgery. However, plaintiff's wife submitted an affidavit which denied ever making such a statement to Dr. Arcillas. On the contrary, the affidavit stated that plaintiff did not have weakness in his legs until after he received the spinal anesthesia at the hospital. As previously noted, facts contained in an affidavit in support of a motion for summary judgment are admitted and must be taken as true for purposes of the motion where the opponent has failed to contradict the facts by counteraffidavit. (*Purtill*, 111 Ill. 2d at 241; *Heidelberger v. Jewel Cos.* (1974), 57 Ill. 2d 87, 92-93, 312 N.E.2d 601.) In the instant case plaintiff has failed to provide any counteraffidavits. Moreover, we agree with the reason-

ing of the trial court that if plaintiff did not experience any weakness in his legs prior to surgery, then Dr. Arcillas could not have been negligent in not noting the weakness in the medical history.

Plaintiff further argues that the testimony of Dr. Brunner, Dr. Cohen, the standards of the Joint Commission on Accreditation of Hospitals and the Physicians Desk Reference for pontocaine established the standard of care upon which the hospital would be measured and a breach of that standard. As previously noted, Dr. Cohen specifically stated that Dr. Arcillas did not deviate from the standard of care in performing his duties. Moreover, Dr. Brunner's deposition testimony and affidavit specifically stated that the anesthesiologist met the standard of care in the medical community in administering the spinal anesthetic to the plaintiff.

■■■ ■ Regarding plaintiff's assertion that the standards of the Joint Commission on Accreditation of Hospitals and the Physicians Desk Reference established a standard of care, our courts have held that certain professional guides, such as hospital licensing regulations, accreditation standards, bylaws and instructions for the use of drugs, may serve as a substitute for expert testimony. (See, *e.g., Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 417-18, 303 N.E.2d 392; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 330-32, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) Plaintiff has submitted into evidence the 1983 standards of the Joint Commission on Accreditation of Hospitals. However, this cause of action arose in 1979; therefore, the 1983 standards of the Joint Commission on Accreditation of Hospitals were not in effect on the date of the surgery, and consequently, are inapplicable to establish a standard of care for a 1979 occurrence. Plaintiff introduced the 1979 standards of the Joint Commission on Accreditation of Hospitals for the first time as an attachment to his reply brief. However, attachments to briefs that are not a part of the record cannot be used to supplement the record and are not properly before a court of review. (*Etten v. Lane* (1985), 138 Ill. App. 3d 439, 442, 485 N.E.2d 1177; *Mahrenholz v. County Board of School Trustees* (1984), 125 Ill. App. 3d 619, 649, 466 N.E.2d 322.) Only documents that were actually before the trial court may be considered on appeal. *Johnson v. Matviuw* (1988), 176 Ill. App. 3d 907, 912, 531 N.E.2d 970; *State Farm Mutual Automobile Insurance Co. v. Stuckey* (1983), 112 Ill. App. 3d 647, 445 N.E.2d 791.

■■■ Plaintiff has also relied on the 1979 Physician's Desk Reference (PDR) for pontocaine as evidence establishing the standard of care. The PDR clearly stated that it is the physician's decision as to

whether a spinal anesthesia will be used based on the physician's appraisal of the advantages of such use and the ability to cope with complications that may arise. In the present case, plaintiff's condition of damage to his central nervous system was not diagnosed until several years after the surgery was performed. At the time of surgery the anesthesiologist determined that the plaintiff was "in satisfactory condition for spinal anesthesia." Plaintiff has failed to introduce any evidence to establish negligence in the administration of the anesthesia, and a bad result does not in all cases necessarily mean that someone was negligent. *Taylor*, 142 Ill. App. 3d at 595; *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 527, 434 N.E.2d 50.

A review of the record has revealed that although plaintiff has alleged negligence against the defendants, plaintiff has failed to offer any acceptable evidence to establish a standard of care or any evidence to support a breach of that standard by Dr. Arcillas or the hospital.

■■ ■ Plaintiff next contends that the trial court erred in requiring him to provide expert testimony when count II of his complaint is based on a theory of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* does apply to medical malpractice actions. (*Taylor*, 142 Ill. App. 3d at 593; *Walker v. Rumer* (1978), 72 Ill. 2d 495, 500, 381 N.E.2d 689.) The purpose of the doctrine is to allow the plaintiff to prove the cause of injury by circumstantial evidence when the direct evidence is primarily within the knowledge and control of the defendant. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 394, 415 N.E.2d 397; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449, 207 N.E.2d 305.) Specifically, the doctrine of *res ipsa loquitur* is a species of circumstantial evidence which permits the trier of fact to draw an inference of negligence if the plaintiff can show that he or she was injured: (1) in an occurrence that ordinarily does not occur in the absence of negligence; (2) by an instrumentality or agency within the exclusive control of the defendant; and (3) under circumstances that indicate the injury was not due to any neglect or voluntary act on plaintiff's part. *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 272, 443 N.E.2d 569; *Spidle v. Steward* (1980), 79 Ill. 2d 1, 5, 402 N.E.2d 216.

■■ ■ It is the plaintiff's responsibility to establish the elements of *res ipsa loquitur* in order to reap the benefits of this doctrine. However, the trial court must decide, in the first instance, as a matter of law whether the doctrine should be applied. (*Spidle*, 79 Ill. 2d at 7; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349, 247 N.E.2d 877.) The doctrine will only apply if the defendant

owes a duty of care to the plaintiff and there has been a breach of that duty. (*Taylor*, 142 Ill. App. 3d at 593.) Under the doctrine, the trier of fact may not draw an inference of negligence based solely on the happening of a rare and unusual result. (*Taylor*, 142 Ill. App. 3d at 592; *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 13, 452 N.E.2d 751.) Evidence must be introduced to establish the rare and unusual event, and it must be coupled with proof of a negligent act. *Spidle*, 79 Ill. 2d at 10; *Taylor*, 142 Ill. App. 3d at 592; *Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 937, 486 N.E.2d 1329.

In the case at bar, plaintiff has failed to demonstrate the first element under *res ipsa loquitur*, which is the injury would not have occurred in the absence of negligence. This element can be established by presenting expert testimony to support the allegation, or by demonstrating that the defendants' conduct was so grossly remiss that it falls within the common knowledge of laymen. *Taylor*, 142 Ill. App. 3d at 593; *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 175; *Walker*, 72 Ill. 2d at 500.

Plaintiff has not offered any acceptable evidence to establish an applicable standard of care, nor has he offered any evidence from which an inference of negligence may be drawn. Specifically, plaintiff did not provide any expert testimony upon which an inference of negligence could be drawn. Furthermore, a determination as to whether the damage to the plaintiff's nervous system was caused by the use of the spinal anesthetic pontocaine is not the type of injury that can reasonably be inferred as to fall within the common knowledge of laymen. Moreover, the deposition testimony of Dr. Brunner revealed that the plaintiff's paralysis after surgery could have resulted from some other undisclosed cause. The showing of a bad result does not itself mean that someone was negligent (*Taylor*, 142 Ill. App. 3d at 595; *Stringer*, 105 Ill. App. 3d at 527), and a bad result standing alone will not support a *res ipsa loquitur* cause of action. (*Chiero*, 74 Ill. App. 3d at 175.) We, therefore, conclude that plaintiff has failed to establish the elements to invoke the doctrine of *res ipsa loquitur*; and under these circumstances, summary judgment was proper.

Plaintiff finally argues that his motion to strike paragraphs 3 and 9 of Dr. Cohen's supplemental affidavit should have been granted pursuant to Supreme Court Rule 191(a) (107 Ill. 2d R. 191(a)) since the affidavit failed to state facts, was conclusory and contradicted Dr. Cohen's deposition testimony. The sufficiency of an affidavit offered to support a summary judgment motion is governed by Supreme Court Rule 191, which requires that affidavits offered in

support of and in opposition to a motion for summary judgment must be based on the personal knowledge of the affiant and must set forth particular evidentiary facts upon which the affiant could competently testify. (107 Ill. 2d R. 191(a); *Johnson v. Matviuw* (1988), 176 Ill. App. 3d 907, 913, 531 N.E.2d 970; *Purtill*, 111 Ill. 2d at 241.) This rule is satisfied if " 'it appears from the whole of the documents that the affiant would be competent to testify if called upon.' " *Purtill*, 111 Ill. 2d at 241, quoting *Nardi, Pain & Podolsky, Inc. v. Vignola Furniture Co.* (1967), 80 Ill. App. 2d 220, 227, 224 N.E.2d 649.

●22 In the instant case, the trial court properly denied plaintiff's motion to strike paragraphs 3 and 9 of Dr. Cohen's supplemental affidavit. Plaintiff questioned Dr. Cohen about these paragraphs during the taking of his deposition. Moreover, it is unquestioned that Dr. Cohen was indeed competent to testify as to the matters included in his affidavit, and the record discloses that he did proceed to testify through deposition testimony. When Dr. Cohen's affidavit is reviewed in conjunction with his deposition, which provided more detailed evidentiary facts regarding the standard of care, and taken as a whole, plaintiff's negligence allegations were refuted as a matter of law, absent the submission of counteraffidavits by the plaintiff. *Johnson v. Matviuw* (1988), 176 Ill. App. 3d 907, 913, 531 N.E.2d 970; *Heidelberger*, 57 Ill. 2d at 92-93.

Since there are no genuine issues of material fact, Dr. Arcillas and the hospital are entitled to summary judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Therefore, we conclude that the trial court's entry of summary judgment for the defendants was not an abuse of discretion. Accordingly, we affirm the entry of summary judgment for the defendants.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.